Case No. 18-596. Vice-President of Oilfields Supply Comp. v. Secretary of Labor Mr. Walter, the positioner. Mr. Colbert, the permanent positioner. All right, Mr. Walker. May it please the Court, good morning. My name is B.J. Walker. I represent the petitioner, respondent, I'm sorry, petitioner, Western Oilfields Supply Company, DBA, Rain for Rent. There are two issues before the Court today. The first is whether the forcible entry and unauthorized search of Rain for Rent's truck was lawful. The second issue is whether Rain for Rent had an employee who was performing services at the time of the inspection. The facts in this case are extremely important, so I'll be brief in describing those. The inspection was conducted by an agent of the Mine Safety Health Administration, MSHA. I think you can be confident the panel's read the facts. Thank you, Your Honor. On the two points, I'll address them in turn. The first, that MSHA's forcible entry into Rain for Rent's truck violated the Fourth Amendment. There are two components to that argument. To understand the components, we must first look to the concept of a warrant and look to the Supreme Court precedent, Donovan v. Dewey, in which the Supreme Court determined that the mine act under which MSHA was constituted was an adequate substitute for a warrant under limited circumstances. The judge below in this case determined an operator's refusal of an inspection is forbidden. Our position is very simple, Your Honors. That is not consistent with Donovan v. Dewey. That is also not consistent with the precedent of this court, which has held, quote, the right to force MSHA to go to court to gain entry is a right that is recognized, and that's in the Carolina Stallite case. That right was denied here. There's no dispute that MSHA's entry into Rain for Rent's truck was forcible. It was done without notice or exigent circumstances. It was done when there was no imminent hazard present, and it was done, according to the inspector, when there was, quote, no immediate reason to conduct the inspection. Because the right to force MSHA to seek judicial review was denied, the right itself violates the principles of Donovan v. Dewey. The remedy for situations such as this. So can I ask you about that? Yes, Your Honor. I understand Donovan to say that the act prohibits forcible entry when entry is refused. That's the meaning of Donovan. In fact, those are the words of Donovan. Yes. Your entry was not refused. The person wasn't at the truck. Correct. And so that there was an entry without advising the person, but it wasn't the kind of entry that Donovan's talking about. The statute that Donovan or the provision that Donovan is talking about is 818, which says a secretary of the Institute of Civil Action, whenever the operator or his agent hinders or delays the secretary or refuses to admit such representative, neither of which occurred in this case. There was no refusal. There was no hindrance. So there was no need to get an injunction. So I'm not sure how you get a Fourth Amendment argument out of this. In Donovan, the Court says that the thing that substitutes for the warrant is the statute's inspection program in terms of the certainty and regularity of its application, and there's no doubt that we have that here. In the Berger case, which comes after Donovan, there was no possibility of precompliance review, and yet again the Court held that the warrantless inspection was okay because everybody was on notice that there would be repeated warrantless inspections. So I'm afraid I'm not seeing a Fourth Amendment argument, nor am I seeing an argument that the statute requires some kind of precompliance review, that you can't enter the property if you don't advise the operator that you're entering the property. Our argument on that point relies on the language which you put it, which was the certainty and regularity of the administration. What did not happen here, which should have happened here, which would have made this inspection certain and regular, is that the inspector should have allowed the operator an opportunity to exercise walk-around rights. Those walk-around rights are not only found in the Mine Act itself, they're found in the Secretary's internal PPM. Well, let me ask you about that. We do have a section of the statute which says no advance notice of an inspection shall be provided to any person, which supports the proposition that they didn't have to give advance notice. Your reference is to 813F, correct? That's the walk-around rights. So I read the walk-around section by its text to say as follows. Representative, the operator, shall be given an opportunity to accompany the Secretary or his authorized representative during the physical inspection for the purpose of aiding such inspection and to participate in the pre- or post-inspection conferences. Opening the door doesn't seem to be relevant to that. The person did have an opportunity to aid the inspection and to participate in it, right? The driver came back up to the car. He was able to point out if he wanted to know the parking brake actually was set or no, there's no need for a parking brake on this car or anything like that. So I'm not sure how the walk-around right provision was violated. It was violated in two different ways and for two different reasons. The first relating to the Fourth Amendment question, because the operator was denied his walk-around rights. Now we're getting into a circle. You're saying there's a Fourth Amendment right because the walk-around requirement wasn't satisfied and therefore the regularity of the inspection system wasn't obtained, correct? Correct, Your Honor. So in order to get that, we first have to ask the question, was the walk-around right violated, correct? Correct. All right. So what's wrong with my reading of the statute which says they should have the opportunity for the purpose of aiding such inspection? Because I understand your argument. You think the purpose of the walk-around is to give them a chance to object to entering at all, not to aiding the inspection. Is that right? The second part of that provision that you're reading, the second part which addresses the pre- and post-inspection conferences, that is an opportunity in which an operator could raise an objection to jurisdiction, could raise an objection to the scope of the inspection. That is necessary under Donovan v. Dewey. Donovan v. Dewey recognizes that there is a right to, quote, force an insurer to go to court. There has to be. There's a right to force. I think we went over that already. The Donovan v. Dewey provision, which is not this provision. It's the injunction provision. It's about the right of the secretary to go to court if the secretary has been refused. There was no refusal here. It doesn't say anything about whether there's jurisdiction or isn't jurisdiction. It doesn't say you have a right to object to jurisdiction. All it says here is you have a right to aid in the inspection and to participate in a pre- or post-inspection conference. Well, he was entitled to participate. He did participate. There was no refusal here because of the secretary's actions to frustrate the ability to refuse. But where does it say you have a right to refuse? In fact, the statute says there is no right to refuse. Isn't that right? Your Honor, if I may, I believe you look at a different provision of the Mine Act, which is Section 108A1 of the Mine Act. Can you tell me? I'm sorry, which? It's Section 108A1 of the Mine Act, which is 818. Yeah, that's what I want. 818 what? Yes, Your Honor, 818A, which is the provision that deals with civil actions by the secretary. Right. This is the provision that has been interpreted by Donovan and by this Court. This is the one I was just reading to you. This is the one that says the secretary may institute a civil action whenever the operator refuses to admit the representatives. That didn't happen here. It doesn't say that the operator has the right to refuse. It just says if he does refuse, then instead of shooting your way into the mine, you are supposed to go to court. That's the purpose of this, to prevent violence at the mine. That very well may be part of the purpose. But I think the consideration here, though, is that the right of the mine operator to participate fully in the inspection, that is the certain and regular administration or application of the Mine Act, is what has been frustrated by the actions of the secretary in this case. How is it frustrated? He participated in the inspection of the car. Well, respectfully, Your Honor, we disagree with that. He didn't get a chance to prevent an inspection of a car, but he was able to participate in the inspection that occurred, isn't that right? Our position is the inspection had concluded effectively when he returned to the truck. The inspector had opened the door, had climbed into the truck, had taken the photograph that he alleges documents the violative condition. His record was made. There was no opportunity to be present. Please, I think we both started the sentence with the exact same words. I don't know if I'm going to say it. What would have happened differently had he been there at the outset than what happened anyway, other than stopping it from happening altogether, which you've already gone over? Certainly. That was the testimony that occurred at trial. In addition to that, one very important thing that could have happened that is discussed and then the case decided, which is to allow the operator an opportunity to collect evidence contemporaneously,  to gather evidence that could aid in the defense of the citation. What prevented him from photographing and doing all those things right there? I'm sorry, Your Honor. I'm not sure I follow that. How was he prevented from documenting what happened? Well, in this case, he wasn't present when the injury took place. Was there an allegation that, in fact, the parking brake was set? I thought it was conceded that it wasn't. No, the only evidence at trial was the evidence of the secretary that it was not set. Do you have an argument that it was set? The person could have testified against it. We have not argued that point, Your Honor. So, again, to repeat Judge Schoenwasser's question, what new evidence could have been presented if there had been a more robust participation in the inspection? I don't know because the representative brain front was not present when the inspection took place. But it goes to a point that was raised in a number of the cases that decided about the importance of contemporaneous collection of information, but also to a point that was very carefully analyzed in the SCP-2 case, which is the case that addresses not the Fourth Amendment issue but the abuse of discretion issue. The abuse of discretion issue, which is an independent basis for our request that the ruling be reversed. And in the SCP-2 case, the court very carefully analyzed the concept of prejudice per se and distinguished between absence of walk-around participation and the denial, the affirmative denial of walk-around rights. Holding government officials must not be permitted to arbitrarily decide when rights may be granted. And that, Your Honor, is an essential point that we want to make here today, which is both the Mine Act and the PPM provide that the secretary shall make every reasonable effort to allow an operator to participate in a walk-around. Every reasonable effort was not made here. In fact, there is a very credible argument to be made. It depends on whether you agree with the view that participate in the walk-around includes refusing entry. If you don't think it includes refusing entry, then there was complete participation in the walk-around. Well, respectfully, Your Honor, we would disagree with that point for this reason. As I mentioned, the inspection was effectively concluded. The evidence was gathered. Photographs were taken. And the inspection was being written. I think that would be a fair argument had you presented below the testimony of your employee the effect that there was something about the inspection itself other than refusing inspection at all that was limited in his part. There was no argument whatsoever below. There was an element of the inspection that he was inhibited in participating in. Is there? Yes, Your Honor, that is correct. He was inhibited and prevented from participating in the inspection, which is the right granted by the Mine Act and the PPM. And to that point, that is the essential element of the abuse of process argument, which is this right was arbitrarily denied. And because it was arbitrarily denied, there must be a consequence. There must be a right to the wrong, which is, again, what the court in the SCP-1 case dealt with. And that right, if you will, is a finding of exclusion of evidence under a... So we've held that refusal to admit an authorized representative into a facility for purposes of conducting an inspection is a violation of the Act, right? I'm sorry, Your Honor. We held in the Starlight case, the case that you cited, that refusal to admit an authorized representative for purposes of conducting an inspection is a violation of the Act. So there was no right to refuse to permit entry. Relating to the question of right of entry, there is a provision in the Act that provides that. I will acknowledge that. Okay. All right. You're out of time, but you probably want to discuss the jurisdictional question that you would have objected to at the time and that you did object to below. Yes. Briefly, Your Honor, the jurisdictional question has to do with the definition of an operator. There are two components to it, an independent contractor and performing services. The discussion below, the agreement between the parties, had to do with the fact that the term performing services has not been addressed and has not been, in our opinion, adequately defined by a court. The independent contractor has been discussed at length. The minimum service test has been addressed. Our point on that is simply that at the time this citation was written, the representative was not performing services. Why does the representative? The statute says contractor. It doesn't say representative, does it? Well, the representative is a contractor. He was there as an agent, as a representative. No, but the statute's – the provision in the statute is independent contractor. I'm trying to find – which is the section we're talking about? AO2. Again, it's 8-what? 802B. 802B, sorry, yeah. Operator means any owner, a C, who operates, controls, or other minor, any independent contractor performing services, right? That's correct. Wright for Rain was performing services, wasn't it? No, our argument is not performing services at the time of the inspection. Who owned the pump? The pump, I believe, was owned by Rain for Rain, my client. Okay, so its pump was on site draining or trying to drain the quarry, correct? Correct. Isn't that a performance of services? Isn't that performing services? The company was performing services, had performed services, and intended to perform services. And at that very moment had a pump on site that was performing services? It did. Okay, well, I don't understand. I don't even understand the argument at all. The statute doesn't say that each individual employee has to be performing services. It has to be – it says any independent contractor performing services. Why wasn't Wright for Rain performing services? Because at the time the citation was written, you did not have the authority to enter the mine to perform the services. But it was already in the mine. That is, its equipment was in the mine performing services. It did not have any person in the mine. It did have equipment. Where in the statute does it say that you had to have an employee on site? It is not addressed by the statute, and that's the question that we're asking. So imagine that the pump, that Wright for Rain had put the pump into the quarry and negligently had failed to secure it. And then all of its employees walked away. And then the pump gyrated wildly and killed 10 miners. Your position would be that the contractor was not liable because it had no employees performing services, even though it had a pump on site that killed five people? I don't know that that would be our position in that circumstance. In this circumstance, because the employee was going there to actually service the pump, to make the pump work, and he was in the process of obtaining permission to perform that work, our argument is simply he was not performing services for the purpose of 802D at that time. At what point would he have actually performed work? Would he have obtained permission to perform the work and then actually entered the mine? So if he had entered the mine but not touched the pump, that would be okay? If he had entered the mine, yes, sir. So if we understand the definition of mine to include these pertinent areas, including parking lots, which many cases do, then he's entered the mine. If he, under that circumstance, he would have entered the mine. Of course, assuming that he had obtained permission to do the work, which is the process he was going through. What says he has to be authorized? I don't understand. I assume he didn't come on his own volition here, did he? No, no. He was asked to come because the pump wasn't performing. You're saying there's some additional step in the office before he can be performing work? He was signing in to obtain permission to go onto the mine site. That's our argument here. Okay. Questions? No, thank you. Thank you. Good morning. Daniel Colbert for the Secretary of Labor. May it please the Court. Mining is an exceptionally dangerous activity, and that's why Congress gave the Mine Safety and Health Administration exceptional enforcement powers, including a regime of warrantless inspections performed multiple times a year with no advance notice. All mine operators are subject to these warrantless inspections, including independent contractors performing services at a mine. At the time of the citation in this case, Rain for Rent's employee and equipment were present at the mine in order to replace a water pump that was essential to the mine's operation. That makes Rain for Rent a mine operator subject to unannounced inspections. Section 103F of the Mine Act provides mine operators with walk-around rights. That's the right to have a representative accompany an inspection inspector during an inspection for the explicit purpose of providing information to aid in the inspection. Substantial evidence supports the administrative law judge's finding in this case that Rain for Rent was provided this opportunity when its employee was permitted to observe the violation, dialogue with the inspector, and provide any mitigating circumstances prior to and after the issuance of the citation. At the very least, substantial evidence supports the administrative law judge's conclusion that Rain for Rent suffered no prejudice because its employee was permitted to prevent any mitigating circumstances. The administrative law judge also correctly declined to hold for the first time that the denial of walk-around rights constitutes a per se violation of the Fourth Amendment. This court should affirm the NOJ's decision in order. Your Honor, adopting Rain for Rent's positions would destroy the warrantless enforcement regime that Congress created and that the Supreme Court has upheld. Their definition of operator would depend on what individual employees are doing at a particular moment, which arguably could allow miners to avoid a citation simply by stopping work when an inspector arrives. The Mine Act simply does not define operator based on what individual employees are doing at the time, but on the overall work that the contractor is performing at the mine. Further, their proposed right to refuse an inspection would destroy the warrantless inspection regime that Congress intended. Under their test, every mine operator could simply refuse an inspection when an inspector arrived, require him to go to court and get an injunction, and therein buy themselves time to fix violations. Congress was very concerned about this happening. That's why they created the warrantless regime and why they required no advance notice. To quote from the Senate report that Donovan B. Dewey quotes, Congress was concerned that in light of the notorious ease with which many safety or health hazards may be concealed if advance warning of an inspection is obtained, a warrant requirement would seriously undercut this Act's objectives. If an injunction were a routine requirement before an inspection could take place, that's the equivalent of a warrant requirement, and that can't be what Congress intended. Congress was very clear that mines are special because of their particular dangers. Now it's true that the Mine Act contains a prohibition on forcible entry, and has instead a provision under Section 108 of the Act that requires an inspection to go to court before forcibly entering a mine, but that simply means that inspection inspectors don't carry guns and aren't going to force themselves onto a mine over an operator's refusal. Section 108 instead is an extraordinary remedy available to the Secretary, and that's the language of Section 108, is that the Secretary may bring a civil action in the event that an operator refused, and I should say in the extremely rare event. That's not the same thing as creating a right to refuse an inspection, and in fact, refusing an inspection is itself a violation of the Act. Instead, the walk-around provision, instead of reading a right to refuse into the walk-around provision of the Act, Section 103F should be read to serve the purpose stated in the statute, which is providing an opportunity for the operator to aid in the inspection. What happened here is really routine. An inspector arrived at the mine, saw what he perceived to be... Can I ask you a question? In a way, I'm asking you to look into your opponent's mind, but there must be an explanation for this. It's obvious that the penalty here is extraordinarily small. In your experience, and in our experience, we've seen many of these appealed. Is there some provision of the statute that makes repeat offenders or something like that more liable? Is that just from an objective? I'm not asking you to be subjective about these parties. Is there some objective reason why parties appeal these incredibly small fines? Yes, there is a repeat offenders provision. I don't think that's the reason in this case. You would have to ask my colleague, but I think my guess is that having a clean safety record, even avoiding even minor violations like this, is important to them, perhaps, for getting contracts in the private market. I'm not sure. I see. Okay. Thank you. In this case, what happened was really routine. An industry inspector saw what he believed to be a safety hazard. He investigated, determined that there was a violation of the act taking place, talked to the employee to see if there was any mitigating circumstances, if, in fact, maybe there wasn't a violation for some reason, determined that there was, and he wrote a citation. That's the way the Mine Act works. It's the way it's worked for 40 years. That's the system that Congress envisioned, and it's the system that the Supreme Court has upheld. If the panel has no further questions, I'll rely on my brief. Thank you. Are there questions? No. Thank you. I think we went over your time, but if you want to take another minute, I'd be happy to hear from you. No, I would only make one point, and that is this. The Mine Act and the PPM and all the guidance issued by the agency says that every effort, every reasonable effort, will be made to allow walk-around rights. That did not happen here. There must be a consequence, and that is what we're asking the Court to consider. What do you think the meaning of the word jurisdictional is in the provision that says not following the walk-around? Assuming you're right about the walk-around statute, that it's not a jurisdictional prerequisite. Well, if you're talking about 103F, the walk-around provision, I think that question was considered and answered by the Court and the Review Commission in SCP-1. I think it was correctly decided where they said, this provision, after a careful analysis, does not prohibit an inspection if the walk-around rights are denied. But if the denial is arbitrary... It can't be about prohibiting. It's a prerequisite to enforcement. Enforcement is not an inspection. Enforcement is what happens after an inspection. So how could that be? Correct. Well, I think it turns on the distinction that the Review Commission has drawn numerous times between participation in walk-around and denial of walk-around rights. For whatever reason, unavailability or a conscious decision not to participate has one effect, but the affirmative denial of those walk-around rights should have a different effect. And should bar enforcement of the provision? Is that what you're saying? I'm sorry, Your Honor? And should bar enforcement of the provision? It should have consequences, and those consequences, if the denial is arbitrary in abuse of discretion, we say is a prejudice per se and should require exclusion of the evidence. And therefore bar enforcement of the provision? Yes, the effect of that. How is that consistent with the statutory words? Because there are two different concerns. The statutory words have to do with the application of the act itself. And the guidance that was given by SCP-1... The views of the Commission don't guide us. Only the views of the Secretary guide us under the statute to the extent we're guided and don't have to just interpret statutory language. That's correct, right? Correct. All right. So now I have just words. Compliance with this subsection, that's compliance with the walk-around section, shall not be a jurisdictional prerequisite to the enforcement of any provision of this chapter. So you're making it a prerequisite to enforcement, are you? Under your proposed remedy, it would be a prerequisite to enforcement. Under our argument, there is a standalone issue, which is if there is an abuse of discretion, an arbitrary denial of the right to participate in that walk-around, that is a separate question. A question separate and apart from whether the statutory provisions allow enforcement action. When there is an affirmative action, an abuse of discretion, on behalf of the agency, that is what we're saying must have a consequence. So you're saying noncompliance by abuse of discretion should lead to nonenforcement. Is that what you're saying? Yes. All right. What about totally intentional noncompliance? That is, totally intentional failure to comply. You would agree with that would also be exclusion, right? Yes, I believe I understand that. So what's left of the sentence? If both intentional and abuse of discretion, noncompliance, bar enforcement, what's left of the meaning of that sentence? Well, I think that sentence, what it means is that, as it says, that that does not bar enforcement under the act itself. But again, if there is an affirmative act, if there's an affirmative wrongdoing by an agent of the government, there must be a consequence to that. That is the abuse of discretion argument that we're making. So it would be outside of the act that that remedy would be imposed? Yes. And who gave either this court or the commission the authority to act beyond the statute? The Constitution. It's a due process issue. Ah. That's only if your Fourth Amendment argument wins. No, I think that's independent of the Fourth Amendment argument. I think that's the Fifth Amendment argument. So you think all arbitrary and capricious violations of regulations are actually constitutional violations? Under the circumstances, depending on the circumstances. That's our argument. Okay.  Thank you all. I appreciate the argument. Thank you.
judges: Garland, Srinivasan, Edwards